1

2

3

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   AHMAD HASAN,

11            Petitioner,              No. CIV S-09-0438 GEB DAD P

12        vs.

13   JOHN W. HAVILAND, Warden,

14            Respondent.             FINDINGS & RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the decision of the California Board

18   of Parole Hearings (hereinafter "Board") to deny him parole for two years at his third parole

19   consideration hearing held on January 8, 2008.  Upon careful consideration of the record and the

20   applicable law, the undersigned will recommend that petitioner's application for habeas corpus

21   relief be denied.

22                    PROCEDURAL BACKGROUND

23        Petitioner is confined pursuant to a judgment of conviction entered in the Contra

24   Costa County Superior Court on August 25, 1993 on a charge of attempted murder with use of a

25   /////

26   /////

1

1  firearm. (Pet. at 1.)[1]  Pursuant to that conviction petitioner was sentenced to life in prison with

2  the possibility of parole plus a consecutive five-year prison term on the use of a firearm

3  enhancement. (Id. at 170, 172.)

4           Petitioner's third parole consideration hearing, which is placed at issue by the

5  habeas petition now pending before this court, was held on January 8, 2008. (Id. at 50.)  At the

6  time of the hearing, petitioner had served fourteen years in prison. (Id. at 144.)  The Board panel

7  in 2008 again found petitioner not suitable for release and denied parole for two years. (Id. at

8  167.)

9           On August 18, 2008, petitioner challenged the Board's decision in a petition for a

10 writ of habeas corpus filed in the Contra Costa County Superior Court. (Answer, Ex. 1 at 2.)

11 That petition was denied on the merits by order dated October 7, 2008. (Answer, Ex. 2.)

12          Petitioner subsequently challenged the Board's 2008 decision in petitions for a

13 writ of habeas corpus filed in the California Court of Appeal and California Supreme Court.

14 (Answer, Exs. 3, 5.)  Those petitions were summarily denied. (Answer, Exs. 4, 6.)

15                          FACTUAL BACKGROUND

16          The Board described the facts of petitioner's offense at the January 8, 2008 parole

17 suitability hearing as follows:

18          Around noon on June 25th, 1992, Terrence Williamson [common
            spellings] was driving his friends, Jason Dorton [D-O-R-T-O-N]
19          and John Fontenot (F-O-N-T-E-N-O-T], in his red Toyota when
            they neared the intersection of Chanslor Street and Richmond Way
20          in Richmond.  [Chanslor, according to the appellate opinion, was
            spelled C-H-A-N-S-L-O-R.]  Fontenot, seated in the right front –
21          [excuse me] in the front passenger seat, saw a person he knew as
            [the initials] J.J. sitting in a beige Datsun and asked Williamson to
22          stop.  J.J., who witnesses later identified as inmate Hasan, walked
            over to the car and had a brief conversation with Fontenot.  Inmate
23          Hasan then pretended to walk away, turned toward the car,
            removed a semi-automatic pistol from his waistband, and shot
24          Fontenot several times from very close range, about one foot.

25  ───────────────────

26          [1] Page number citations such as this one are to the page number reflected on the court's
    CM/ECF system and not to page numbers assigned by the parties.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

Inmate Hasan ran back to the Datsun and sped away.  Investigators found .40 caliber shell casings at the scene.  When the shooting started, Williamson, the driver, jumped out of the car, and Dorton, who was seated in the back, ducked behind the seat.  When inmate Hasan left the area, Williamson and Dorton rushed Fontenot to the hospital and left him there.  Most of these details came from pre-trial statements that Williamson and Dorton made to police investigators, which they either contradicted or disavowed at trial.  Fontenot was severely injured.  Portions of his skull were shattered and he sustained wounds in his neck, shoulder, thigh, and pelvis.  As a result, the right side of his face was paralyzed and he lost vision in his right eye.  Due to his injuries, he suffered some impairment to his memory.  At trial Fontenot was unable to recall a beige Datsun or having a conversation with his assailant, however, he was able to describe his assailant generally, that is, a tall, slim Black man with hair hanging braids and a beanie cap.  Significantly, he did not recall talking to the police, selecting inmate Hasan's photo out of the police lineup, or even being shown photographs.  He could not remember who shot him, and he did not recognize inmate Hasan at trial.  Detectives McCormick and Feng [Feng is F-E-N-G] had heard the gunshots while investigating a nearby burglary, and chased the beige Datsun until they lost sight of the vehicle.  The car was abandoned near the intersection of Twelfth and Roosevelt Streets.  Residents of the area testified seeing a Black man run through their yards, but none of them was able to supply a complete description and no one identified inmate Hasan as that person.  Some of these witnesses saw the – that individual duck into a nearby apartment house, emerge a few minutes later, flag down a black sedan and climb in.

16    (Pet. at 68-71.)

17          At his 2008 parole suitability hearing petitioner explained to the panel that he

18    "acted impulsively and irrationally and just was scared for no reason, and I assaulted an innocent

19    man."  (Id. at 117.)  He also explained that he had come to the conclusion over time that his

20    victim and the other persons in the car with the victim did not "mean[] [him] any harm," contrary

21    to what he thought at the time of the shooting.  (Id.)  Petitioner stated that the victim

22    subsequently explained to him that he only wanted to tell petitioner he had not been involved in

23    recent gang activity.   Petitioner told the Board members that he did not give the victim any

24    opportunity to speak to him, but merely got out of his car and started shooting because he was

25    afraid.  (Id. at 135, 145.)  Petitioner stated that he panicked and shot "an innocent man."  (Id. at

26    145.)

3

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we

1    may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error,

2    we must decide the habeas petition by considering de novo the constitutional issues raised.").

3           The court looks to the last reasoned state court decision as the basis for the state

4    court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  See also Barker v.

5    Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005) ("When more than one state court has adjudicated

6    a claim, we analyze the last reasoned decision").  If the last reasoned state court decision adopts

7    or substantially incorporates the reasoning from a previous state court decision, this court may

8    consider both decisions to ascertain the reasoning of the last decision.  Edwards v. Lamarque,

9    475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court reaches a decision on the

10   merits but provides no reasoning to support its conclusion, a federal habeas court independently

11   reviews the record to determine whether habeas corpus relief is available under § 2254(d).

12   Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167

13   (9th Cir. 2002).  When it is clear that a state court has not reached the merits of a petitioner's

14   claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not

15   apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052,

16   1056 (9th Cir. 2003).

17   II.  Petitioner's Claims

18          Petitioner raises several challenges to the Board's 2008 decision finding him

19   unsuitable for parole.  After setting forth the applicable legal principles, the court will evaluate

20   these claims in turn below.

21       A.  Applicable Legal Standards

22          1.  Due Process in the California Parole Context

23          The Due Process Clause of the Fourteenth Amendment prohibits state action that

24   deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

25   due process violation must first demonstrate that he was deprived of a liberty or property interest

26   protected by the Due Process Clause and then show that the procedures attendant upon the

1    deprivation were not constitutionally sufficient.  <u>Kentucky Dep't of Corrections v. Thompson</u>,

2    490 U.S. 454, 459-60 (1989); <u>McQuillion v. Duncan</u>, 306 F.3d 895, 900 (9th Cir. 2002).[2]

3              A protected liberty interest may arise from either the Due Process Clause of the

4    United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

5    expectation or interest created by state laws or policies."  <u>Wilkinson v. Austin</u>,  545 U.S. 209,

6    221 (2005) (citations omitted).  <u>See</u> <u>also</u> <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987).

7    The United States Constitution does not, of its own force, create a protected liberty interest in a

8    parole date, even one that has been set.  <u>Jago v. Van Curen</u>, 454 U.S. 14, 17-21 (1981);

9    <u>Greenholtz v. Inmates of Neb. Penal</u>, 442 U.S. 1, 7 (1979) (There is "no constitutional or

10   inherent right of a convicted person to be conditionally released before the expiration of a valid

11   sentence."); <u>see</u> <u>also</u> <u>Hayward v. Marshall</u>, 603 F.3d 546, 561 (9th Cir. 2010) ("[I]n the absence

12   of state law establishing otherwise, there is no federal constitutional requirement that parole be

13   granted in the absence of 'some evidence' of future dangerousness or anything else.") (en banc).

14   However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

15   parole release will be granted' when or unless certain designated findings are made, and thereby

16   gives rise to a constitutional liberty interest."  <u>McQuillion</u>, 306 F.3d at 901 (quoting <u>Greenholtz</u>,

17   442 U.S. at 12).  <u>See</u> <u>also</u> <u>Allen</u>, 482 U.S. at 376-78; <u>Pearson v. Muntz</u>, 606 F.3d 606, 609 (9th

18   Cir. 2010) ("The principle that state law gives rise to liberty interests that may be enforced as a

19   matter of federal law is long established."); <u>Hayward</u>, 603 F.3d 562-63 ("Although the Due

20   /////

21

22              [2]  In the context of parole proceedings, the "full panoply of rights" afforded to criminal
     defendants is not "constitutionally mandated" under the federal Due Process Clause.  <u>Jancsek v.</u>
23   <u>Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and citation
     omitted).  The United States Supreme Court has held that due process is satisfied in the context
24   of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity
     to be heard and, if parole is denied, a statement of the reasons for the denial.  <u>Hayward v.</u>
25   <u>Marshall</u>, 603 F.3d 546, 560 (9th Cir. 2010) (en banc) (quoting <u>Greenholtz</u>, 442 U.S. at 16).  <u>See</u>
     <u>also</u> <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972) (describing the procedural process due in
26   cases involving parole issues).

1  Process Clause does not, by itself, entitle a prisoner to parole in the absence of some evidence of

2  future dangerousness, state law may supply a predicate for that conclusion.")

3          In California, a prisoner is entitled to release on parole unless there is "some

4  evidence" of his or her current dangerousness.  Hayward, 603 F.3d at 562 (citing In re Lawrence,

5  44 Cal.4th 1181, 1205-06, 1210 (2008) and In re Shaputis, 44 Cal. 4th 1241 (2008)); Cooke v.

6  Solis, 606 F.3d 1206, 1213 (9th Cir. 2010), pet. for cert. filed (Sept. 2, 2010) (No. 10-333); Pirtle

7  v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th Cir. 2010) ; In re Rosenkrantz, 29

8  Cal.4th 616, 651-53 (2002).   Therefore, "California's parole scheme gives rise to a cognizable

9  liberty interest in release on parole."  Pirtle, 611 F.3d at 1020 (quoting McQuillion, 306 F.3d at

10  902).  This liberty interest is enforceable under the federal Due Process Clause pursuant to

11  clearly established federal law.  Haggard v. Curry, 623 F.3d 1035, 1040-41 (9th Cir. 2010);

12  Cooke, 606 F.3d at 1213 (denial of parole to a California prisoner "in the absence of 'some

13  evidence' of current dangerousness . . . violat[es] . . . his federal right to due process."); Pearson,

14  606 F.3d at 609 (a state parole system that gives rise to a liberty interest in parole release is

15  enforceable under the federal Due Process Clause); Hayward, 603 F.3d at 563; see also Castelan

16  v. Campbell, No. 2:06-cv-01906-MMM, 2010 WL 3834838, at * 2 (E.D. Cal. Sept. 30, 2010)

17  (McKeown, J.) ("In other words, in requiring [federal] habeas courts to review parole denials for

18  compliance with California's 'some evidence' rule, Hayward holds that California state

19  constitutional law creates a cognizable interest in parole absent 'some evidence' of

20  dangerousness, and that the federal Due Process Clause in turn incorporates that right as a matter

21  of clearly established federal law.")

22          2.  California's Statutes and Regulations on Parole

23          When a federal court assesses whether a state parole board's suitability

24  determination was supported by "some evidence" in a habeas case, that analysis "is shaped by the

25  state regulatory, statutory, and constitutional law that governs parole suitability determinations in

26  California."  Pirtle, 611 F.3d at 1020 (citing Hayward, 603 F.3d at 561-62).  The setting of a

7

1  parole date for a California state prisoner is conditioned on a finding of suitability.  Cal. Penal

2  Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The state regulation that governs parole

3  suitability findings for life prisoners states as follows with regard to the statutory requirement of

4  California Penal Code § 3041(b):  "Regardless of the length of time served, a life prisoner shall

5  be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose

6  an unreasonable risk of danger to society if released from prison."  Cal. Code Regs. tit. 15, §

7  2281(a).  In California, the overriding concern in determining parole suitability is public safety.

8  In re Dannenberg, 34 Cal. 4th 1061, 1086 (2005).  This "core determination of 'public safety' . . .

9  involves an assessment of an inmates *current* dangerousness."  In re Lawrence, 44  Cal. 4th at

10  1205 (emphasis in original).  Accordingly,

11
12  > when a court reviews a decision of the Board or the Governor, the
   > relevant inquiry is whether some evidence supports the decision of
   > the Board or the Governor that the inmate constitutes a current
   > threat to public safety, and not merely whether some evidence
13  > confirms the existence of certain factual findings.

14  Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th at 658; In re Dannenberg, 34 Cal. 4th at 1071;

15  and In re Lee, 143 Cal. App.4th 1400, 1408 (2006)).  "In short, 'some evidence' of future

16  dangerousness is indeed a state *sine qua non* for denial of parole in California."  Pirtle, 611 F.3d

17  at 1021 (quoting Hayward, 603 F.3d at 562).  See also Cooke, 606 F.3d at 1214.[3]

18  Under California law, prisoners serving indeterminate prison sentences "may

19  serve up to life in prison, but they become eligible for parole consideration after serving

20

21  [3] As the Ninth Circuit has explained, the "some evidence"

22
   > requirement imposes substantive rather than purely procedural
23 > constraints on state officials' discretion to grant or deny parole: "a
   > reviewing court . . . is not bound to affirm a parole decision merely
   > because the Board or the Governor has adhered to all procedural
24 > safeguards."  In re Lawrence, 44 Cal.4th [at 1210].   Rather the
   > court must ensure that the decision to deny parole is "supported by
25 > some evidence, not merely by a hunch or intuition."  Id. [at 1212].

26  Cooke, 606 F.3d at 1213-14.

1  minimum terms of confinement." In re Dannenberg, 34 Cal. 4th at 1078.  The Board normally

2  sets a parole release date one year prior to the inmate's minimum eligible parole release date, and

3  does so "in a manner that will provide uniform terms for offenses of similar gravity and

4  magnitude in respect to their threat to the public." In re Lawrence, 44 Cal. 4th at 1202 (citing

5  Cal. Penal Code § 3041(a)).  A release date must be set "unless [the Board] determines that the

6  gravity of the current convicted offense or offenses, or the timing and gravity of current or past

7  convicted offense or offenses, is such that consideration of the public safety requires a more

8  lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ."  Cal.

9  Penal Code § 3041(b).  In determining whether an inmate is suitable for parole, the Board must

10  consider all relevant, reliable information available regarding

11  
12  
13  
14  
15  
>          the circumstances of the prisoner's social history; past and present
>          mental state; past criminal history, including involvement in other
>          criminal misconduct which is reliably documented; the base and
>          other commitment offenses, including behavior before, during and
>          after the crime; past and present attitude toward the crime; any
>          conditions of treatment or control, including the use of special
>          conditions under which the prisoner may safely be released to the
>          community; and any other information which bears on the
>          prisoner's suitability for release.

16  Cal. Code Regs., tit. 15, § 2281(b).  However, "there must be more than the crime or its

17  circumstances alone to justify the Board's or the Governor's finding of current dangerousness."

18  Cooke, 606 F.3d at 1214.  See also Lawrence, 44 Cal. 4th at 1211 ("But the statutory and

19  regulatory mandate to normally grant parole to life prisoners who have committed murder means

20  that, particularly after these prisoners have served their suggested base terms, the underlying

21  circumstances of the commitment offense alone rarely will provide a valid basis for denying

22  parole when there is strong evidence of rehabilitation and no other evidence of current

23  dangerousness.")

24          The regulation identifies circumstances that tend to show suitability or

25  unsuitability for release.  Cal. Code Regs., tit. 15, § 2281(c) & (d).  The following circumstances

26  are identified as tending to show that a prisoner is suitable for release:  the prisoner has no

9

1   juvenile record of assaulting others or committing crimes with a potential of personal harm to

2   victims; the prisoner has experienced reasonably stable relationships with others; the prisoner has

3   performed acts that tend to indicate the presence of remorse or has given indications that he

4   understands the nature and magnitude of his offense; the prisoner committed his crime as the

5   result of significant stress in his life; the prisoner's criminal behavior resulted from having been

6   victimized by battered women syndrome; the prisoner lacks a significant history of violent crime;

7   the prisoner's present age reduces the probability of recidivism; the prisoner has made realistic

8   plans for release or has developed marketable skills that can be put to use upon release;

9   institutional activities indicate an enhanced ability to function within the law upon release.  Id., §

10  2281(d).

11          The following circumstances are identified as tending to indicate unsuitability for

12  release:  the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;

13  the prisoner had a previous record of violence; the prisoner has an unstable social history; the

14  prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental

15  problems related to the offense; the prisoner has engaged in serious misconduct in prison.  Id., §

16  2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an

17  especially heinous, atrocious, or cruel manner include:  multiple victims were attacked, injured,

18  or killed in the same or separate incidents; the offense was carried out in a dispassionate and

19  calculated manner, such as an execution-style murder; the victim was abused, defiled or

20  mutilated during or after the offense; the offense was carried out in a manner that demonstrated

21  an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable

22  or very trivial in relation to the offense.  Id., § 2281(c)(1)(A) - (E).

23          In the end, under state law as clarified by the California Supreme Court,

24      the determination whether an inmate poses a current danger is not
        dependent upon whether his or her commitment offense is more or
25      less egregious than other, similar crimes.  (Dannenberg, supra, 34
        Cal. 4th at pp 1083-84 [parallel citations omitted].)  Nor is it
26      dependent solely upon whether the circumstances of the offense

10

1    exhibit viciousness above the minimum elements required for
     conviction of that offense.  Rather, the relevant inquiry is whether
2    the circumstances of the commitment offense, when considered in
     light of other facts in the record, are such that they continue to be
3    predictive of current dangerousness many years after commission
     of the offense.  This inquiry is, by necessity and by statutory
4    mandate, an individualized one, and cannot be undertaken simply
     by examining the circumstances of the crime in isolation, without
5    consideration of the passage of time or the attendant changes in the
     inmate's psychological or mental attitude. [citations omitted].

6

7    In re Lawrence, 44 Cal. 4th at 1221.  See also In re Shaputis, 44 Cal. 4th at 154-55.

8              In this federal habeas action challenging the denial of release on parole it is the

9    court's task to determine "whether the California judicial decision approving the governor's [or

10   the Board's] decision rejecting parole was an 'unreasonable application' of the California 'some

11   evidence' requirement, or was 'based on an unreasonable determination of the facts in light of

12   the evidence.'"  Hayward, 603 F.3d at 563.  See also Pearson, 606 F.3d at 609 ("Hayward

13   specifically commands federal courts to examine the reasonableness of the state court's

14   determination of facts in light of the evidence."); Cooke, 606 F.3d at 1213.   Accordingly, below

15   the court considers whether the Board's decision to deny parole in this case constituted an

16   unreasonable application of the "some evidence" rule.

17        B.  Decision of the Board

18             In addressing the factors it considered in reaching its 2008 decision that petitioner

19   was unsuitable for release on parole, the Board in this case stated as follows:

20             And the Panel has reviewed all information received from the
               public and relied upon the following circumstances in concluding
21             that Mr. Hasan is not suitable for parole and that he would pose an
               unreasonable risk of danger to society or threat to public safety if
22             released from prison.

23             In a succinct summary, Mr. Hasan, the gains that you have
               established compared to the misconduct – the violent misconduct
24             that we are confronted with indicate that the gains are recent and
               they're going to have to be maintained by you over an extended
25             period of time in order for you to obtain a parole date.

26   /////

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

In looking at this particular – in looking at the life crime, you were on probation at the time for an offense involving the possession of loaded weapons, that is, possession of sale for rock cocaine, and you had had the juvenile adjudication for shooting someone in March of 1987.  And notwithstanding your felony probation status, you shot Mr. Fontenot with no provocation.  Mr. Fontenot was unarmed.  And most alarming about the particular shooting, it was at close range and he was shot six times.  If you needed to send any kind of a message to Mr. Fontenot, you clearly exceeded any reasonable, rational standards by shooting him in such a manner, leaving him blind in one eye and with psychological damage, brain damage.

And it's important for this record to note that from your incarceration and the beginning of your life term in October of '93 through your 2005 appearance before the Board of Parole Hearings, you had absolutely denied your involvement and, in fact, had contended an alibi, implying that you were not even in the area at the time.  And that is a substantial factor in our assessment that your gains are recent in nature.

In looking at your participation in self-help – and please correct me if I'm wrong as this is not a judicial proceeding, this is simply a hearing – that by my analysis of your correctional counselor reports, there was no participation in self-help from 1995 through 2002.  There was a period of participation in AA/NA in February through September of 2003, and no other participation through 2005.  Another basis of our assessment your gains are recent in nature.

Yes, sir, go ahead.

INMATE HASAN:  Well, you asked me to correct you if you were wrong.

PRESIDING COMMISSIONER KUBOCHI:  That's right.

INMATE HASAN:  That's incorrect.

PRESIDING COMMISSIONER KUBOCHI:  Okay.

INMATE HASAN:  The Crimanon –

PRESIDING COMMISSIONER KUBOCHI:  I didn't say – I didn't exclude Crimanon.  I said – that's a correspondence course.  I'm saying within the institution.

INMATE HASAN:  Corcoran offered, no.  That was it.  I got involved with Crimanon through their Lifer's Group.

PRESIDING COMMISSIONER KUBOCHI:  Okay.

12

1        INMATE HASAN:  And that was short lived.

2        PRESIDING COMMISSIONER KUBOCHI:  Okay.

3        INMATE HASAN:  Corcoran offered no other programs.

4        PRESIDING COMMISSIONER KUBOCHI:  Right.  Right.  Okay.
         And so the record will note that you participated in Crimanon.  But
5        in consideration of 1995 through 2002, there was none.

6        INMATE HASAN:  That's self-help.

7        PRESIDING COMMISSIONER KUBOCHI:  Right.  And your
         participation in these groups are of recent origin.
8
         Again, a basis for our assessment of – that your gains are recent in
9        nature in view of the pattern of violent or armed behavior between
         1987 through your 115 for fighting in December of 1995.  And so
10       in looking at that 115 for fighting in 1995, you were 24 years of
         age.  And up until that point, eight years involved violence or your
11       use of weapons, being armed.  It's important to note,
         notwithstanding your reasons, is that after committing the crime of
12       attempted murder in June of 1992, you violated your probation –
         felony probation by being armed with a handgun on your arrest in
13       November of 1992.  And so there are these patterns in which,
         notwithstanding the fact that you were on probation, you continued
14       to violate the terms of probation, disregard the law by choosing to
         do what you felt you were justified.  In looking at the probation in
15       case 9308966, a review of your adjustment to probation from
         Sacramento was conducted by that probation officer and your
16       probation adjustment was poor.  You failed to report as ordered,
         and you did not report for drug testing as ordered.  And so all of
17       these facts, although historic, have to be considered by this Panel
         in assessing your suitability for parole.
18
         A substantial issue that remains unresolved is your reaction, your
19       behavior to people who disagree with you or people who have
         opinions different than yours, because throughout this eight year
20       period this Panel objectively notes that your reaction when you
         disagree with people or you have opinions different than others
21       was to resort to violence, such as at the gambling debt when you
         could have walked away, albeit you were 15.  Your shooting of Mr.
22       Fontenot almost five years later when he was unarmed.  Your
         shooting at the automobiles because of a relationship problem with
23       your girlfriend at the time, in which you went over to two different
         households, pulled out your gun, and then shot the cars numerous
24       times.  And so this Panel is not confronted with an individual
         situation, one situation in which you used deadly force upon
25       another, but a long period in which you armed yourself – you were
         armed and you showed no hesitation in using that weapon.

26  /////

In a separate decision we find that Mr. Hasan continues to need therapy in order to face, discuss, and understand and cope with stress in a non-destructive manner. Until progress is made, Mr. Hasan continues to be unpredictable and a threat to others.

In a separate decision the Hearing Panel finds that it is not reasonable to expect that parole would be granted at a hearing in the next two years. In looking at the life crime, Mr. Hasan, without any provocation, shot an unarmed individual six times at close range. The person was in a motor vehicle, and because of the close range was particularly vulnerable as Mr. Hasan had armed himself, walked up, and shot this individual, Mr. Fontenot. At the time Mr. Hasan was on probation for a felony crime in which he was armed with a deadly weapon at the time of the commission of that particular crime. Although Mr. Hasan has given his explanation for the shooting of Mr. Fontenot, his personal motivations for using deadly force under the circumstances remained unreasonable. Mr. Hasan had a prior adjudication for shooting someone in 1987.

The psychological evaluation, albeit with the corrections that Mr. Hasan believes should be made, nonetheless, as a result of the administration of diagnostic tests indicating moderate likelihood of recidivism, it is not supportive of release at this time.

Mr. Hasan, what's going to be important for you is to remain disciplinary free, to continue in the positive programming, continue in your rehabilitation as you seem [sic] and deem appropriate. But when you address the Board of Parole hearings, it's going to be important that you identify the stressors or trigger mechanisms in you, both then and now, and establish and explain the coping mechanisms that you have developed to handle those trigger mechanisms, and that the model would be very similar to that used in substance abuse, which has a very good record for lowering a relapse. In this case – in your case it's going to be violence relapse, because the same methodology is used. If – in substance relapse, the person has to identify the trigger mechanisms in them, because once those trigger mechanisms are enacted, the person resorts and turns to substance abuse. In your particular case, you want to specifically address issues such as the people who disagree with you or have opinions different than you, the rage or anger issues that existed at the time, but also the coping mechanisms that you develop as your behavior, based on the pattern of misconduct that I've identified, is extremely important for you to address.

As I've indicated, if this Panel was faced with a situation, a one-time event in which you shot someone, your explanations today probably would be sufficient. However, you have a period of eight years to address as to why you – why it was so easy for you to resort to violence.

Yes, sir.

14

INMATE HASAN:  Excuse me.  I was wondering why those questions weren't posed to me prior to me having my opportunity to speak, because it's simple.  It's like if I'm dealing with an intelligent person and he's not a criminal and I'm not a criminal, that fear isn't there.  And now that I'm no longer a criminal, even if I'm dealing with a criminal, that fear isn't there because I know I have to use diplomacy.  And I believe that I stated that several times, and I stated that I have prayer and fasting.  These things are defense mechanisms as far as triggers.  But when you dealing – when you're a criminal yourself and you're dealing with other criminals, then other factors are there and they have to be noted from a criminal perspective.  I'm no longer a criminal.  When I'm dealing with an individual and he's cussing and ranting and raving, I don't cuss.  I'm not going to respond in like manner.  If he calls me an MF and goes off the hinges, I'm going to say, "You know what, you're upset right now."  And I said that.  I said patience and diplomacy and tact need to be exercised.  I said that several times.

PRESIDING COMMISSIONER KUBOCHI:  I understand that, sir.  And like I said, we have told you that your gains are recent in nature in view of the pattern of misconduct and the facts that we have observed.  And we'd like to see you maintain that over an extended period of time.

INMATE HASAN:  I can't change my criminal history or the way I acted when I was a criminal dealing with criminals, where for the most part I feared other individuals who are of the same race as me and of the same criminal nature.  And it's the individuals that Mrs. Holder just described to you have gotten even worse.  And she knows.  And I understand this is a hearing, but for the record she knows that there's going to be a level of fear.  I'm quite sure if she pulls up to a liquor store or to any store and a group of individuals pull up in a car and she's in Richmond, California, and they're all young Black males, I bet you she's concerned about her safety.  As a criminal I had that same concern, even more so.  But I'm no longer a criminal, and even as the person as a Muslim, I know how to deal with criminals.  I know how to deal with any situation that life would put before me that I would be confronted with.  And I thought – apparently I failed in expressing that, but I thought that I conveyed that.

PRESIDING COMMISSIONER KUBOCHI:  Thank you very much.  The record is complete.  Mr. Blonien, do you have any further comments?

DEPUTY COMMISSIONER BLONIEN:  I wrote so many notes down, and clearly you're not the same young man who came to prison.  But you're a work in progress.  And that's not bad.  The serious work you started in 1998, you upgraded after the 2005 hearing.  Read this transcript, read your thought pattern, and then

/////

15

1    re-energize yourself even more.  And the journey is long, but the
     end is worth it.

2
     So I wish you good luck.
3
     INMATE HASAN:  Thank you.
4
     PRESIDING COMMISSIONER KUBOCHI:  You know, Mr.
5    Hasan, I was the one that rendered this opinion.  I don't play
     amateur psychology, but you should try to understand this term
6    "oppositional behavior" and determine whether or not you have
     components of that.  And it's not quite confrontational, but there's
7    a concept called oppositional behavior.  And you want to see if you
     have components of that, because it still would be a concern if you
8    demonstrate such behavior traits –

9    INMATE HASAN:  If I –

10   PRESIDING COMMISSIONER KUBUCHI:  – as to how you're
     going to reach to people who have a different opinion than you,
11   such as your responses to our opinion in denying parole.

12   (Pet. at 152-62.)

13              C.  Due Process Claim

14              In his pending petition, petitioner claims that the Board's 2008 decision finding

15   him unsuitable for parole violated his right to due process because it was "arbitrary" and not

16   supported by "any relevant, reliable evidence" that he currently poses an unreasonable risk of

17   danger to society.  (Id. at 23.)  Petitioner argues that his crime of conviction is no longer evidence

18   that he is currently dangerous, especially given his commendable performance while in prison.

19   He argues that whether his gains in prison were only "recent" is not an enumerated factor

20   indicating unsuitability for release on parole and was therefore an improper basis for the Board's

21   decision.  Petitioner also argues that the Board improperly relied on his prior criminal record and

22   his juvenile adjudications to find him unsuitable for parole in 2008.  (Id.)

23              In finding petitioner unsuitable, the Board essentially relied on the fact that

24   petitioner had just recently begun to make strides in admitting his role in the commitment offense

25   and demonstrating that he no longer posed a danger to society.  As noted by the Board, until 2005

26   petitioner had denied any involvement in the crime.  For this reason, he did not demonstrate

                                              16

1  remorse or take positive steps to understand his motivations and prepare for a life outside of

2  prison until just a few years before the 2008 hearing.  The Board also noted that petitioner had an

3  extensive criminal history involving violence and the use of guns prior to his commitment

4  offense.  Finally, as set forth above, one Board panel member observed that petitioner's attitude

5  during the suitability hearing remained somewhat "oppositional," and the presiding

6  Commissioner pointed to petitioner's previous angry reaction in situations where people

7  disagreed with him or had opinions that were different than his.  Another Board panel member

8  concluded that petitioner was still "a work in progress."

9          It is true that one of the factors relied on by the Board in finding petitioner

10  unsuitable for parole in 2008 was the unchanging circumstances of his crime of conviction.

11  According to the cases discussed above, the commitment offense can constitute "some evidence"

12  to support the Board's parole unsuitability decision only as long as it is still relevant to a

13  determination of the inmate's current dangerousness.  Specifically, "the circumstances of a

14  commitment offense cannot constitute evidentiary support for the denial of parole 'unless the

15  record also establishes that something in the prisoner's pre-or post-incarceration history, or his or

16  her current demeanor and mental state, indicates that the implications regarding the prisoner's

17  dangerousness that derive from his or her commission of the commitment offense remain

18  probative to the statutory determination of a continuing threat to public safety.'" Cooke, 606 F.3d

19  at 1216 (citing Lawrence, 44 Cal.4th at 1214).  In this case, however, the Board did not rely on

20  the commitment offense alone, but also cited  petitioner's demeanor at the suitability hearing, his

21  previous history of armed violence and anger management issues, his relatively recent

22  participation in self-help programs, his disciplinary violations while in prison, and his refusal to

23  admit his role in the shooting until 2005.  These pre and post-conviction factors support the

24  Board's 2008 finding that the circumstances of the commitment offense remained probative of

25  petitioner's current dangerousness at that time.

26  /////

1      The Contra Costa County Superior Court rejected petitioner's due process

2  arguments, reasoning as follows:

3          Petitioner's attack on the Board's decision specifically in this case
           need not detain us long.  The standard of review, while not
4          toothless, is exceedingly deferential.  The Board's determination
           that Petitioner's current dangerousness does not permit setting a
5          release date must be upheld if there is "some evidence" to support
           it.  E.g., Lawrence, slip op. at 36-38.
6
           Here, the Board adduced a number of factors in support of its
7          decision:

8          •       The facts of the underlying offense, in which Petitioner,
                   with no provocation, shot the unarmed victim six times at
9                  close range.

10         •       The fact that, at the time of the offense, Petitioner was on
                   probation for a crime involving loaded weapons.
11
           •       Petitioner's poor performance on that probation.
12
           •       Petitioner's 1987 juvenile adjudication for shooting
13                 someone.

14         •       Petitioner's absolute denial of involvement in the
                   underlying offense until 2005.
15
           •       The recency of Petitioner's self-help gains, especially when
16                 compared with the above history of armed violence
                   (reinforced by a 1995 infraction for fighting in prison).
17
           These findings are supported in the record, and they are more than
18         enough to provide "some evidence" in support of the Board's
           determination.
19

20  (Pet. at 274-75.)

21      The Contra Costa County Superior Court's decision that petitioner's right to due

22  process was not violated by the Board's 2008 decision finding him unsuitable for parole in light

23  of the evidence and factors outlined above, is not contrary to or an unreasonable application of

24  federal law.  Rather, the Board's 2008 decision that petitioner posed a current danger to society

25  was based on "some evidence" in the record bearing "indicia of reliability."  Jancsek, 833 F.2d at

26  1390.  Accordingly, petitioner is not entitled to federal habeas relief with respect to his claim that

1  the Board's failure to find him suitable for parole at his 2008 hearing violated his right to due

2  process.

3              D.  Constitutionality of Regulations

4              Citing mainly California court decisions, petitioner next argues that the "Board of

5  Parole Hearings' unsuitability factors are void and unconstitutional" because state regulations

6  governing suitability for release on parole have exceeded the scope of the authority conferred on

7  the Board by the state legislature.  (Pet. at 15-16.)  Petitioner argues that the Board "has violated

8  the separation of powers doctrine by encroaching upon the powers of the Legislature."  (Id. at

9  17.)  He complains that the Board refuses to find him suitable for parole even though attempted

10 murder, his crime of conviction, is included in the list of offenses for which parole is available.

11 (Id.)  Petitioner also argues that the "Board's regulations" concerning reliance on the gravity of

12 the commitment offense to find a prisoner unsuitable for parole are invalid because they "are

13 based on a capital murder special circumstance, the use of which thwarts the jury process and

14 heightens the stigma and degree of the convicted offense," and because they "provide no

15 meaningful standard for narrowing the class of persons to which they apply."  (Id. at 19.)

16             The Contra Costa County Superior Court also rejected these arguments, reasoning

17 as follows:

18             Petitioner first argues that the Legislature has directed that his
               offense is one for which he is eligible for parole.  Hence, he
19             reasons, the Board has violated the separation of powers, and
               improperly invaded the legislative sphere, by deciding that
20             Petitioner is ineligible for parole.  But that is not what the Board
               has done.  Petitioner argues as if "eligibility" for parole
21             automatically meant the grant of parole.  The Board did not decide
               that Petitioner is *ineligible* for parole, in derogation of the
22             Legislature's dictates (or of his judicially determined sentence).
               Rather, it determined that Petitioner is not yet *suitable* for release –
23             which is precisely the determination that the Legislature has
               commanded the Board to make.
24
25 (Id. at 269-70.)

26 /////

1    Petitioner has failed to demonstrate that the California regulations concerning

2    eligibility for parole violate the federal constitution.  He has also failed to show that the decision

3    of the Contra Costa County Superior Court rejecting these claims is contrary to or an

4    unreasonable application of federal law.  Petitioner's arguments, if any, that the state court has

5    erred in applying state law are not cognizable in this federal habeas corpus proceeding.  See

6    Rivera v. Illinois, ___ U.S. ___, 129 S. Ct. 1446, 1454 (2009) ("[A] mere error of state law . . . is

7    not a denial of due process") (quoting Engle v. Isaac, 456 U.S. 107, 121, n. 21 (1982) and Estelle

8    v. McGuire, 502 U.S. 62, 67, 72-73 (1991)).  Accordingly, petitioner is not entitled to federal

9    habeas relief with respect to these claims.[4]

10

11    [4]  Petitioner argues that "the Board's criteria for denying parole based on the gravity of
the convicted offense has destroyed the limitation of its discretion placed upon it by Penal Code
12    Section 3041." (Pet. at 20.)  He argues that the Board does not sufficiently narrow the criteria in
determining parole eligibility, but essentially concludes that every crime of conviction is
13    "heinous, atrocious, and cruel." (Id. at 20-21.)  To the extent petitioner is arguing California's
parole suitability regulations are unconstitutionally vague, his claim should be rejected.  The Due
14    Process Clause does not require the same precision in the drafting of parole release statutes as is
required in penal laws.  Hess v. Board of Parole and Post-Prison Supervision, 514 F.3d 909,
15    913-14 (9th Cir. 2008).  A prisoner's vagueness challenge to the standards applicable at a parole
hearing fails where the prisoner had received the process due under the decision in Greenholtz v.
16    Inmates of Nebraska Penal.  Butler v. Calderon, No. C 97-2184 EDL(PR), 1998 WL 387612, at
*5 (N.D. Cal. July 6,1998).  As discussed above, petitioner's parole hearing satisfied due process
17    requirements.  Therefore, his vagueness claim is without merit.  Id.; see also Glauner v. Miller,
184 F.3d 1053, 1055 (9th Cir.1999) (statute requiring that an inmate be certified "not a menace
18    to the health, safety or morals of others" for parole eligibility was not unconstitutionally vague);
Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1399 (9th Cir. 1987) (rejecting claim that due
19    process required articulation of a standard definition of "significant planning and preparation" in
the parole context).  Similar claims challenging California parole regulations on vagueness
20    grounds have also been rejected by several district courts.  See Winston v. California Bd. of
Prison Terms, No. S-00-0156 FCD GGH P, 2006 WL 845584, at *2 (E.D. Cal. Mar. 31, 2006);
21    Sariaslan v. Butler, No. C 04-01073 CRB, 2004 WL 2203472, at *5 (N.D. Cal. Sept. 28, 2004);
Masoner v. California, No. CV 03-1261-ER, 2004 WL 1080177, at *1 (C.D. Cal. Jan. 23, 2004).
22    In addition, it does not appear that the California Code of Regulations with respect to parole have
been found to be unduly vague or overbroad under federal law.  Nor has federal law been found
23    to preclude the use of terms such as "especially cruel" or "callous" as guidelines in Board parole
suitability evaluations.  See Hess, 514 F.3d at 914 ("Neither this court nor the Supreme Court has
24    identified the level of specificity required for a parole release statute to avoid impermissible
vagueness).  Cf. Maynard v. Cartwright, 486 U.S. 356, 363-65 (1988) (in a capital case, the
25    "especially heinous, atrocious, or cruel" aggravating circumstance was unconstitutionally vague
because it did not offer sufficient guidance to the jury in deciding whether to impose the death
26    penalty); Tuilaepa v. California, 512 U.S. 967, 972 (1994) (statutory aggravating circumstances
in capital cases "may not be unconstitutionally vague").

1          E. Apprendi

2          Citing the decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), petitioner

3   argues that the Board may not find him unsuitable for parole on the ground that his crime is

4   "heinous, atrocious or cruel" unless a jury had previously made that determination beyond a

5   reasonable doubt.  (Pet. at 19.)  The Contra Costa County Superior Court rejected this argument,

6   reasoning as follows:

7               A similar confusion underlies Petitioner's next contention.
            Petitioner argues that he cannot be denied parole based on the
8           "especially heinous, atrocious, or cruel" nature of his commitment
            offense, unless a jury determines that his offense was "heinous,
9           atrocious, or cruel."  The case law he relies on, however, arose in
            the setting of aggravating fact findings used to impose an increased
10          sentence.  Petitioner is long past that procedural point.  A jury has
            already found Petitioner guilty of an offense for which he could
11          have been, and in fact was, sentenced to life with the possibility of
            parole.  The Board's challenged decision does not increase or
12          augment that sentence in any way.  Rather, the issue before the
            Board was whether to release Petitioner despite his not having yet
13          served the term to which he was sentenced.  There is no authority
            requiring jury trial for parole determinations, and indeed jury trial
14          would be fundamentally inconsistent with the executive character
            of parole decisions.

15

16  (Id. at 270.)

17          Petitioner has failed to demonstrate that the Superior Court's decision rejecting

18  this claim is contrary to or an unreasonable application of federal law.  In Apprendi, the United

19  States Supreme Court determined that the Due Process Clause of the Fourteenth Amendment

20  requires any fact other than a prior conviction that "increases the penalty for a crime beyond the

21  prescribed statutory maximum" to be "submitted to a jury and proved beyond a reasonable

22  doubt."  530 U.S. at 490.  The Apprendi decision is inapplicable "because the Board did not

23  increase [petitioner's] sentence beyond the statutory maximum of life imprisonment for his

24  crime" of attempted murder.  See Mayfield v. Carey, ___F. Supp. 2d___, 2010 WL 3941940, *8

25  (E.D. Cal. Oct. 6, 2010) (rejecting identical claim).  For the reasons expressed by the Superior

26  Court, the Board's 2008 decision finding him unsuitable for parole did not violate petitioner's

21

1  Sixth Amendment right to a jury trial.  Accordingly, petitioner is not entitled to federal habeas

2  relief with respect to this claim.

3                   F.  <u>Psychological Evaluation</u>

4            Petitioner claims that the Board's reliance on his 2007 psychological evaluation to

5  deny him parole for two years, as opposed to one year, violated his right to due process because

6  the evaluation contained several factual errors.  (Pet. at 31.)  This claim appears to be moot

7  because more than two years have now passed since the May 7, 2008 effective date of the

8  Board's decision denying petitioner parole.  <u>See</u> <u>Chang v. United States</u>, 327 F.3d 911, 918-19

9  (9th Cir. 2003) (a case properly brought in the first instance is rendered moot when "interim

10  relief or events have completely and irrevocably eradicated the effects of the alleged violation")

11  (quoting <u>County of Los Angeles v. Davis</u>, 440 U.S. 625, 631 (1979)).

12           Even if the claim were not moot, it lacks merit.  The Contra Costa County

13  Superior Court rejected petitioner's claim in this regard, reasoning as follows:

14         Petitioner further argues that the Board erred in relying on a
          psychologist's evaluation in its separate determination that

15         Petitioner's next parole hearing would be in two years rather than
          one.  Petitioner contends that the evaluation was faulty in several

16         factual respects.  It is not clear that the Board relied at all on the
          psychological evaluation in making that separate determination; the

17         evaluation is principally referred to in support of a third separate
          determination, that petitioner continues to need therapy.  In any

18         event, Petitioner fully apprised the Board of the flaws he perceived
          in the evaluation; and the Board expressly stated that, even

19         allowing for those asserted flaws, the evaluation did not support
          release at this time.  Petitioner's attack on the evaluation creates no

20         basis for granting habeas relief.

21  (Pet. at 274-75.)

22           The Superior Court's rejection of this aspect of petitioner's due process claim is

23  not contrary to or an unreasonable application of federal law and should not be set aside.   As

24  discussed above, in finding petitioner unsuitable for parole in 2008 the Board relied on the

25  circumstances of the commitment offense along with  petitioner's demeanor at the suitability

26  hearing, his previous history of armed violence and anger management issues, his relatively

1   recent participation in self-help programs, his disciplinary violations while in prison, and his

2   refusal to admit his role in the shooting until 2005.  The court has concluded that these various

3   factors constituted "some evidence" supporting the Board's 2008 decision.  It does not appear

4   that petitioner's challenge to the psychological report involves any of this evidence relied upon

5   by the Board.  Petitioner has failed to demonstrate that the Board's reliance, if any, on his 2007

6   psychological evaluation to find him unsuitable for parole for a period of two years violated his

7   federal constitutional rights.

8          Moreover, any claim that petitioner's due process rights were violated by the

9   Board's denial of parole for a two-year period, as opposed to a one year denial, would also fail

10  since there is no authority to support such a claim.  See Asgari v. Cullen, No. CV 09-1830-JSL

11  (AJW), 2010 WL 4916589, at *4 (C.D. Cal. Oct. 25, 2010) (because no case has held that a

12  multi-year deferral by the Board is a violation of federal due process rights, at best a challenge to

13  a multi-year denial of parole alleges only a violation of state law and does not present a

14  cognizable claim for purposes of federal habeas review); Edwards v. Curry, No. C 08-1923 CW,

15  2009 WL 1883739, at *8 (N.D. Cal. June 30, 2009).

16                                  CONCLUSION

17         Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that

18  petitioner's application for a writ of habeas corpus be denied.

19         These findings and recommendations are submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

21  one days after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24  shall be served and filed within fourteen days after service of the objections.  Failure to file

25  objections within the specified time may waive the right to appeal the District Court's order.

26  /////

1  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

2  1991).

3          In his objections petitioner may address whether a certificate of appealability

4  should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal

5  Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of

6  appealability when it enters a final order adverse to the applicant); Hayward v. Marshall, 603

7  F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability

8  to review the denial of a habeas petition challenging an administrative decision such as the denial

9  of parole by the parole board).

10  DATED: December 10, 2010.

12  Dale A. Drozd

13  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

14  DAD:8
   hasan438.hc

24